No. 14417

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

THE STATE OF MONTANA,

                Plaintiff and Respondent,

    -vs-

KENNETH BREITENSTEIN, SR.,

                Defendant and Appellant.

---

Appeal from: District Court of the Nineteenth Judicial District,
              Honorable Robert M. Holter, Judge presiding.

Counsel of Record:

    For Appellant:

        Frank B. Morrison, Sr., Whitefish, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        William A. Douglas, County Attorney, Libby, Montana

---

                Submitted on briefs: November 8, 1978

                    Decided: MAR 2 - 1979

Filed: MAR 2 - 1979

Thomas J. Kearney
                         Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant Kenneth Breitenstein, Sr., appeals from a judgment convicting him of the crime of aggravated assault following a jury trial in the District Court of Lincoln County.

On July 4, 1977, appellant Kenneth Breitenstein, Sr., was arrested in Lincoln County, Montana, on the charge of aggravated assault under section 94-5-202, R.C.M. 1947, now section 45-5-202 MCA. An information was filed charging that the defendant had purposely and knowingly placed William H. Heika in reasonable apprehension of serious bodily injury by use of a weapon, specifically that he had pointed a pistol at William Heika and threatened to shoot him if he moved. Defendant pleaded "not guilty". Later defendant filed notice of his intention to rely on the defenses of insanity, self-defense and alibi.

Jury trial was held March 14 and 15, 1978, and appellant was found guilty of the crime of aggravated assault. He was sentenced to four years in the Montana State Prison. The sentence was suspended.

On July 4, 1977, William Heika, Earl Ballenger and Jim Tompkins were on a spur road a short distance off the Long Meadow Road in the Yaak Valley of Lincoln County, Montana, on their way to cut firewood at Roderick Butte nearby. Heika held a Forest Service permit to cut firewood in the area. On the spur road they came upon a number of trees felled across the road blocking further progress. They proceeded to cut the trees into blocks, loading them into Heika's pickup to clear passage for their three pickups.

Appellant was driving down Long Meadow Road on his way home from work. He saw the three pickups on the spur road and recognized Heika's.

-2-

Appellant testified he proceeded to his ranch nearby and washed up. He then strapped on his .22 caliber pistol, tied a block of salt on his trail bike and proceeded to take the salt to his cattle. He testified that he had felled the trees across the spur road where Heika and his two companions were sawing in order to contain his cows within a Forest Service Grazing Permit located adjacent to his ranch and upon which the incident occurred. He testified that after salting his cattle, he decided to investigate to see if the trees had been removed, which would allow his cows to walk away.

Appellant testified he was somewhat upset when he arrived at the scene of the incident. He apparently addressed himself to Heika almost exclusively although Heika was the furthest from him as he arrived on the scene. He testified he inquired ". . . what the hell they were doing there, cutting those trees." Heika's version was appellant ". . . came charging out of the woods . . . [yelling at us] 'What in the hell are you doing on my property'. That he had cut down those trees for a reason . . ." Appellant called Heika some very profane and insulting names and ordered all of them off "his property". Heika was from 10 to 25 feet from appellant. Appellant was standing about at the rear of Heika's pickup.

Both agree Heika took several steps forward in appellant's direction. Appellant at this point drew his automatic pistol and pointed it at Heika. Heika testified he had been ordered to leave and was trying to get to his pickup to do so. Appellant's version is the steps were threatening, as Heika had a beer can in his hand and Heika "had a weird look on his face", "a twisted look like he was

really mad and going to get revenge". Appellant testified he said, "Stop Bill" and Bill stopped. Heika testified he stopped but that again appellant ordered him to leave and again he took a step toward his pickup whereupon appellant pulled the slide to cock the automatic pistol and said "All right you fat son-of-a-bitch, another step and I will blow you full of holes like a sieve."

Heika turned away, walked to the farthest pickup, Tompkins', and left. Appellant holstered the pistol and allowed Tompkins to take Heika's pickup. Heika made a complaint to the sheriff and appellant was arrested.

Some background is necessary.

Appellant Kenneth Breitenstein owned the family ranch of 150 acres along the South Fork of the Yaak River and had lived there his whole life, 44 years. He worked in the woods felling trees and had some cattle on his ranch. He also had, as his family before him, a U. S. Forest Service Grazing Permit on some 70 odd acres adjacent to the ranch.

The complaining witness, William Heika, had lived in the Yaak community for two or two and one-half years before the incident. He "thinned in the woods" and ran a bar called The Cherokee Strip, located about two or two and one-half miles from the scene of the incident.

Appellant and Heika had met four or five times in the time Heika had lived in the community.

In 1976 Heika owned three Irish Setters and intended to raise setters at the Cherokee Strip. In August 1976 appellant's son, Ken, Jr., shot two of Heika's dogs killing one and wounding another. One dog, "Big Mel", was registered and a champion, worth $350 according to Heika. According

-4-

to appellant, the dogs were shot because they were chasing appellant's cattle. In early 1977 Heika discovered who had shot his dogs and filed a lawsuit against appellant. Appellant also testified Heika had threatened him over the Citizen Band radio threatening to get appellant and his son if he could ever catch them "alone out on the road".

The issue on appeal is framed by appellant as follows:

Did the District Court err in excluding evidence of specific instances of prior threats made by the victim of the alleged assault against appellant/defendant which were known by appellant and which engendered in him a reasonable belief that he was in danger of imminent bodily injury?

It is well to note that the District Court did allow defendant to testify fully as to threats made by Heika against himself and his son.

Two separate offers of proof were made by appellant.

The first was when appellant's son was called as the first defense witness and before appellant had testified.

The offer was that the witness, Ken, Jr., would testify that Heika's mother-in-law said she would blow Ken, Jr.'s head off with a shotgun and this threat was related to appellant. Further, he would testify that in March 1977 there was a confrontation between Heika and Ken, Jr., at the Dirty Shame Saloon when Heika said he was going to knock the hell out of Ken, Jr. This threat was also relayed to appellant.

The offer of proof was rejected by the court for lack of foundation. Appellant cites Rules 404-(a)(2) and 405(b), Mont.R.Evid., as to when specific instances of conduct may be used to show character where character is an essential element of the defense.

We hold that the trial court was correct in its ruling at this time.

The Commission Comment to Rules 404(a)(2) and 405(b) states in effect that the Montana rules were modified from the Federal Rules specifically to be restatements of existing Montana case law.

Appellant's argument recognizes the Montana rule is that "after the accused has laid his foundation for self-defense", such evidence may be admissible." He argues that by appellant giving notice of his intention to rely on self-defense that no further foundation was necessary.

This Court in State v. Logan (1970), 156 Mont. 48, 64-65, 473 P.2d 833, 842, specifically rejected this argument:

> ". . . The existence of the issue of self-defense and an issue as to the agressor in the altercation is necessary before corroboration by evidence of the deceased's reputation for turbulence and violence is admissible.
>
> ". . .
>
> "The notice of intention to rely on self-defense served by defendant on the state prior to trial is immaterial and does not place this matter in issue at the trial. Defendant is not bound to rely on this defense at the trial notwithstanding service of this notice. Until such time as defendant took the stand and admitted the killing, the issue of self-defense was not joined at the trial. Thus no foundation existed for the admission of the testimony." (Emphasis added.)

The Court then allowed appellant to testify to his knowledge of prior threats Heika had made. He testified that in the middle of April, he, appellant, was talking to a neighbor on his Citizen Band radio when Heika broke in and said "I'll get even with you and your son" if he could ever catch them alone somewhere on the road.

He also testified that in April or May his daughter had told him that Heika had stopped where she was living and

made her go for a ride with Heika in his pickup. Heika wanted appellant's daughter to testify against her father in the lawsuit over the dogs. Further, Heika had threatened to catch appellant out on the road and even things up.

He further testified that in the spring of 1977 his son, Ken, Jr., came home and told him he had had an encounter with Heika at the Dirty Shame Saloon where Heika had threatened to get him for shooting the dogs.

Under cross-examination Heika admitted the two incidents dealing with appellant's son and daughter. He denied the C. B. threat. However, all the threats were the same, he would get appellant and his son out on the road alone and even things up.

A second offer of proof was made to prove by the testimony of one David Lawson that the C.B. threat was made. The testimony of Elizabeth Breitenstein, now Elizabeth Jetton, would provide corroboration of Heika's visit to her and his threats to her father and brother. Further, Ken, Jr., would testify as to threats made by Heika at the Dirty Shame Saloon.

This offer was rejected by the court after stating he had allowed appellant to testify concerning the threats on his own state of mind, but found "under the Rules of Evidence that it would exclude it because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue and resulting in misleading the jury."

The court also refused the State through William Heika to rebut the threats testified to by appellant.

The trial judge made his assessment of the probative value of the threat evidence and his reasoning as follows:

"The very most that can be said is that with the beer can in his hand, if you take the Defendant's view of him moving toward his agressor, if you take the complaining witness's statement of standing there and I started to go to my car and a guy whipped out a pistol and then said I am going to blow you out of existence, or something to that effect, then it might have been admitted solely for the state of mind of the Defendant. I don't believe its of any great value to the Jury."

Judge Brantly in State v. Hanlon (1909), 38 Mont. 557, 574, 580, 100 P. 1035, addressed the admissibility of such evidence as follows:

". . . But no hard-and-fast rule of exclusion may be laid down. A wise discretion should be the guide, and in all cases where the specific act, by reason of its proximity in time and place, would legitimately reflect upon the conduct or motives of the parties at the time of the affray . . . it should be admitted."

Did the trial judge abuse his discretion?

"As the admissibility of the evidence itself must rest largely in the sound discretion of the trial court, so must the extent to which the investigation of collateral issues arising thereon may so be lodged in its discretion, and its action will not be reviewed except where its discretionary power has been manifestly abused." Hanlon, 38 Mont. at 580.

The trial judge stated that in his opinion, further testimony as to the threats would be excluded because its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue and result in misleading the jury."

Rule 403, Mont.R.Evid., states:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury . . . or needless presentation of cumulative evidence."

The Commission Comment reads:

"A key element of this rule is the discretion of the judge in deciding whether otherwise relevant evidence is to be excluded because of the factors listed in the rule."

In State v. Jennings (1934), 96 Mont. 80, 89, 28 P.2d 448, this Court stated:

> "Such evidence is admissible only when the defendant has interposed a plea of self-defense (citing cases) and when a proper foundation is laid by proof of some overt act justifying such defense. (Citing cases.) The trial court should exercise a sound legal discretion in determining whether or not the proper foundation has been laid for the introduction of the offered testimony. . .
>
> ". . .
>
> "'The true solution is to exercise a discretion and to admit such facts when common sense tells that they could legitimately affect a defendant's apprehension.' (1 Wigmore on Evidence, 2nd ed., 521.)"

In this case the jury was informed of the threats. From the total record of the case, the long-standing controversy between Heika and appellant and his family is clear and uncontradicted. The evidence by the witnesses to the incident substantiates that even during the confrontation, the dog problem was argued.

Under these circumstances we hold that the trial judge did not abuse his discretion by ruling that repetitious testimony as to prior threats should be excluded as likely to distract and mislead the jury from the issues actually in controversy. See State v. Heaston (1939), 109 Mont. 303, 312-13, 97 P.2d 330.

The judgment of conviction is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

-9-