No. 84-427

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

STATE OF MONTANA,

      Plaintiff and Respondent,

  -vs-

CURTIS VAUGHAN SHORT,

      Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Fourth Judicial District,
              In and for the County of Missoula,
              The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          John E. Riddiough argued, Missoula, Montana

      For Respondent:

          Hon. Mike Greely, Attorney General, Helena, Montana
          John Paulson argued, Asst. Atty. General, Helena
          Robert L. Deschamps, III, County Attorney, Missoula
          Montana:  Karen Townsend argued, Deputy County Atty.

_____

                 Submitted:  April 15, 1985
                   Decided:  July 11, 1985

Filed:  JUL 11 1985

*Ethel M. Harrison*
_____
              Clerk

Mr. Justice L.C. Gulbrandson delivered the Opinion of the Court.

The defendant appeals from a judgment and a denial of his motion for a new trial by the District Court of the Fourth Judicial District, Missoula County. The judgment was entered and the motion denied on May 24, 1984, after a jury verdict of guilty on two counts of felony theft. We affirm.

In January 1983, the Oregon State Police contacted Fred Simmons, an informant, to assist in an investigation of Curtis Short, the defendant, being conducted by the Missoula County Sheriff's Office. Simmons had known and worked with Short about eleven or twelve years earlier. The Oregon State Police arranged for Simmons to contact Short. During a meeting the next day, Simmons and Short discussed "boning out" or disassembling trucks and they agreed Simmons would provide titles and license plates for vehicles which Short would steal.

Short planned to travel to Missoula on January 26, 1983, to arrange for the theft of a semi-tractor which had been "special ordered" by someone in California. Simmons informed the Oregon authorities of the plans and they passed the information along to the Missoula County Sheriff's Office. The Oregon police rented a maroon Buick for Simmons, gave him money for expenses and sent another informant, Mike West, to accompany Simmons and Short to Missoula.

Short, Simmons and West were under constant surveillance by the Missoula authorities from the time they arrived in St. Regis and Missoula until they returned to Oregon. When they arrived in Missoula, Simmons and West contacted the Missoula County Sheriff's Office and West was fitted with a concealed radio transmitter. The three men met with several other people to arrange for the theft of two semi-tractors, a green

1981 Kenworth owned by Gebert's Trucking of Missoula and a white 1977 Peterbilt owned by Montana Medical Supply of Missoula. These trucks were substitutes for the one Short originally intended to steal because that vehicle was no longer available. Short also met with a Missoula businessman and discussed camouflaging serial numbers.

At about 9:15 p.m. on January 27, 1983, a Missoula deputy observed the maroon Buick and Short at the site where the Gebert semi was parked. Short got out of the car, entered the semi through the bottom portion of the passenger side and drove it away without turning on the headlights. With the Buick following, Short drove the semi to the Interstate, exchanged places with someone in the car and drove to the Montana Medical facility. There he drove off in the Montana Medical truck and trailer. Deputies followed the truck to East Missoula, where Short dropped the trailer and then headed west on the Interstate. The two trucks and the Buick were under surveillance until they arrived at Short's farm at Canby, Oregon.

Oregon authorities continued to monitor Short's activities. They established a "safe house" for Simmons to live in which was equipped with a telephone recorder, formed Suncrest Trucking, Inc., to do business and provided phony truck titles and vehicle identification numbers for Simmons' use in the operation. The authorities were unable to keep up with the increasing number of vehicles being stolen by Short, so in April 1983, they terminated the operation.

On October 28, 1983, an information was filed charging Short with two counts of felony theft. After the omnibus hearing on March 9, 1984, the State gave notice of intent to rely on other crimes evidence. The trial began on April 9, 1984. At trial the State presented the testimony of officers

3

from the Oregon State Police and the Missoula County Sheriff's Office who participated in the investigation and surveillance. Simmons, West and two men who had met with Short and Simmons in Missoula prior to the thefts, also testified for the State. Short's prior statement and an oral admission to an Oregon officer were also introduced at trial.

During cross-examination of Simmons, counsel for Short sought to introduce copies of bench warrants issued for Simmons in connection with his failure to appear on theft charges in Washington. When Simmons acknowledged on the stand that he had failed to appear without lawful excuse, the court refused to admit the warrant copies. Simmons indicated that he did not wish to discuss the pending charges in Washington, asserting his privilege against self-incrimination. After eliciting that the charges involved the theft of Short's property, defense counsel attempted to discuss the details of those charges, and the State's objection was sustained. An Oregon detective later testified regarding the property dispute between Short and Simmons.

Defense counsel presented the testimony of Thomas Cromwell, a brother of one of the alleged partners in the Oregon thefts, who related certain conversations he had with Simmons in late December 1983 and early January 1984. He attempted to introduce tape recordings of the conversations, but the trial court refused to admit them. The trial court also refused two proposed defense instructions setting forth Short's "theory" of defense.

At the close of the trial, on April 13, 1984, the jury returned a verdict of "guilty" on both counts of theft.

Later, Simmons was arrested on the Washington charges and gave a statement to an Oregon attorney containing

4

information not testified to at Short's trial. Short made a motion for a new trial based on this information which was argued before the District Court on May 24, 1984. The court denied the motion and sentenced Short to a total of twenty years with twelve suspended. He was designated a non-dangerous offender for purposes of parole.

The four issues presented on appeal are:

(1) Whether the District Court violated defendant's Sixth Amendment right to confrontation of witnesses by not allowing examination of Simmons regarding Washington charges against him for the purpose of showing bias or motive to be untruthful during defendant's trial?

(2) Whether the District Court erred in not allowing the introduction of tape recordings of telephone conversations between Simmons and another witness, Cromwell, which were offered by defendant to impeach Simmons?

(3) Whether the District Court erred in not giving two of defendant's proposed instructions which explained his "quasi-entrapment" theory of the case?

(4) Whether the District Court erred in denying defendant's motion for a new trial on the above grounds and on the basis of newly discovered evidence?

The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured for defendants in state as well as in federal criminal proceedings. Pointer v. Texas (1965), 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. "A primary interest secured by the confrontation clause is that of cross-examination." State v. Camitsch (Mont. 1981), 626 P.2d 1250, 1255, 38 St.Rep. 563, 568, citing Davis v. Alaska (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347.

5

A witness' credibility may be attacked through cross-examination to reveal possible biases, prejudices, or ulterior motives if they relate directly to issues or personalities in the case at hand. Davis, 415 U.S. at 315, Camitsch, 626 P.2d at 1254-1256. However, the extent of cross-examination on whether a witness has been accused of another or prior crime is within the trial court's discretion. State v. Carns (1959), 136 Mont. 126, 136, 345 P.2d 735, 741; State v. Howard (1904), 30 Mont. 518, 77 P. 50; see also, Alford v. United States (1931), 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624. The extent of cross-examination for these purposes is restricted because of the limited probative value in relation to credibility. An unproven charge does not necessarily indicate a witness' credibility, since innocent persons may be arrested or accused of a crime and are presumed innocent until guilt is legally established. 81 Am.Jur.2d, Witnesses § 587. This Court has permitted cross-examination on threats or inducements by the State, the failure to charge the witness with a crime and the reason for the witness' presence in jail, State v. Ponthier (1959), 136 Mont. 198, 346 P.2d 974; on claimed intimidation of witnesses, State v. Booke (1978), 178 Mont. 225, 583 P.2d 405; and on threats and assaults to the witness by a party, Cissel v. Western Plumbing and Heating (Mont. 1980), 612 P.2d 206, 37 St.Rep. 966.

Short argues that the trial court unconstitutionally restricted his cross-examination of Simmons by not allowing extensive examination of pending charges against Simmons. Simmons admitted under cross-examination that he had failed to appear on bench warrants from the State of Washington. He also acknowledged that the charges in Washington involved an allegation that he had stolen Short's property. The jury

heard about Simmons' participation in Short's crimes, his alleged theft of Short's property, his fear of "the mob" and his desire for protection. This cross-examination brought out all the information necessary to argue the credibility, motive and bias of this witness to the jury. We hold that limiting the extent of the cross-examination on the pending charges in Washington did not violate Short's right to confrontation of witnesses and was not an abuse of the trial court's discretion.

During cross-examination, Simmons asserted his privilege against self-incrimination concerning the pending charges in Washington. That privilege is not waived by testifying for the prosecution. Rule 608(b), M.R.Evid. The trial court property restricted inquiry into those charges on this basis as well.

Short also contended, as part of this issue, that the trial court should have admitted copies of the Washington bench warrants into evidence for the purpose of showing Simmons' bias or motive to be untruthful. Rule 608(b), M.R.Evid. provides:

> "Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness . . ."

The trial court exercised its discretion by allowing inquiry into a specific instance of conduct, Simmons' failure to appear on the warrants, and would have admitted the exhibits if he had denied his failure to appear. We hold the trial court acted within the limits of its discretion by restricting the impeachment evidence.

7

As to the second issue, Short contends that tape recordings of conversations made nearly a year after the thefts between Simmons and another witness, Thomas Cromwell, were probative because they would have allowed the jury to hear Simmons' voice tell how Short had been framed. The trial court agreed to permit use of the tapes for impeachment or refreshing recollections of a witness. The trial court also expressed concern about Simmons not being available for cross-examination since he had been excused as a witness. After Cromwell testified about certain statements by Simmons which were inconsistent with his earlier testimony, the tapes were offered at trial to rebut that earlier testimony and as prior consistent statements by Cromwell to rebut a charge of subsequent fabrication. Rule 403, M.R.Evid. provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Both parties acknowledge that the trial court is given wide discretion to exclude evidence as cumulative even though it is relevant.

In State v. Breitenstein (1979), 180 Mont. 503, 591 P.2d 233, this Court held that the trial court did not abuse its discretion by ruling that repetitious testimony should be excluded under Rule 403. The defendant in Breitenstein sought to introduce corroborating evidence of a threat which the victim had made to the defendant. Since the defendant had previously testified about the threat, the court concluded that the probative value of the additional evidence was substantially outweighed by the factors listed in Rule 403. Citing State v. Hanlon (1909), 38 Mont. 557, 100 P. 1035, this Court quoted the following passage with approval:

8

"As the admissibility of the evidence itself must rest largely in the sound discretion of the trial court, so must the extent to which the investigation of collateral issues arising thereon may so be lodged in its discretion, and its action will not be reviewed except where its discretionary power has been manifestly abused." 180 Mont. at 509, 591 P.2d at 236.

Even if the tapes were otherwise admissible, the trial court had discretion to exclude them where the time necessary to hear them would not be judiciously expended because the evidence was merely cumulative and otherwise before the jury. 31A C.J.S. Evidence, § 166. Faced with the request to play several hours' worth of tapes which would merely repeat the testimony of a previous witness regarding collateral matters, we hold the trial court did not abuse its discretion by excluding the tapes.

The trial court refused two instructions offered by Short on his quasi-entrapment theory of the case. He contends on appeal that fundamental fairness requires an instruction on his theory that if he did exert unauthorized control over the trucks, he did so negligently rather than purposely and knowingly and therefore he was not guilty. The instructions must be viewed as a whole to determine whether the defendant was limited in fairly presenting his theory. State v. Graves (Mont. 1981), 622 P.2d 203, 210, 38 St.Rep. 9, 16. The jury was instructed that the State had to prove each and every element of the crime by evidence and beyond a reasonable doubt (No. 2); that an element of theft is the state of mind of "purposely" or "knowingly" (No. 10); and that another element of this offense is that the defendant must have the purpose of depriving the owner of the property (No. 10). The jury was given the definitions of "purposely" and "knowingly" (No. 5). The jury was instructed on "mere passivity or negative acquiescence" and "mere presence and

failure to disapprove or oppose the crime" (No. 13), and the effect of defendant's possession of stolen property (No. 17). The court gave a "duress or coercion" instruction (No. 19). The proposed instructions at issue merely present his argument or theory that he did not have the requisite mental state to commit the offense. While a defendant is entitled to have instructions on his theory, State v. Thomas (1966), 147 Mont. 325, 413 P.2d 315, he is not entitled to put his arguments in those instructions, Hunsacker v. Bozeman Deaconess Foundation (1978), 179 Mont. 305, 333, 588 P.2d 493, 509. We hold that the defendant was denied neither fundamental fairness nor the opportunity to present his theory to the jury.

Short requested a new trial on the basis that he was denied full confrontation and impeachment of Simmons, discussed above, and on the basis that the new evidence presented at the time of the hearing on the motion for new trial showed Simmons made statements after trial demonstrating the testimony he gave was false. In State v. Greeno (1959), 135 Mont. 580, 342 P.2d 1052, this Court set forth rules governing the granting of new trials on the ground of newly discovered evidence as follows:

> "(1) That the evidence must have come to the knowledge of the applicant since the trial; (2) that it was not through want of diligence that it was not discovered earlier; (3) that it is so material that it would probably produce a different result upon another trial; (4) that it is not cumulative merely--that is, does not speak as to facts in relation to which there was evidence at the trial; (5) that the application must be supported by the affidavit of the witness whose evidence is alleged to have been newly discovered, or its absence accounted for; and (6) that the evidence must not be such as will only tend to impeach the character or credit of a witness." (Citations omitted.) 135 Mont. at 586, 342 P.2d at 1055.

10

The trial court reviewed the new evidence, a tape recording of an Oregon attorney's interview with Simmons, and held a hearing on the motion for a new trial on May 21 and May 24, 1984. At that hearing, the trial court adopted the State's reasoning that the evidence was not so material that it would have produced a different result; the evidence was cumulative as other impeachment evidence; and that there was other substantial evidence of Short's guilt. The defendant has not shown any error in this reasoning. We hold that the District Court did not err by denying Short's motion for a new trial on the basis of newly discovered evidence or on the issues discussed above.

The judgment and order of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices