DA 11-0238

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 47

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CHRISTOPHER WAGNER,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 07-97C
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Wade Zolynski, Chief Appellate Defender; Lisa S. Korchinski, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General; C. Mark Fowler, Assistant Attorney General; Helena, Montana

Submitted on Briefs:  November 28, 2012
Decided:   February 26, 2013

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Christopher Wagner (Wagner) appeals from the judgment of the Eighteenth Judicial District Court, Gallatin County, entered after a jury convicted him of attempted deliberate homicide, as well as from the District Court's denial of his motion to dismiss. We affirm.

¶2 Wagner raises the following three issues on review:

¶3 *Issue One: Was Wagner denied his constitutional right to due process because a motions hearing failed to record and therefore no transcript is available for effective appellate review?*

¶4 *Issue Two: Did the District Court err by denying Wagner's motion to dismiss for negligent destruction of exculpatory evidence?*

¶5 *Issue Three: Did the District Court err by improperly limiting Wagner's cross-examination of a State's witness?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 This case arises from a gun fight between Wagner and Michael Peters (Peters) that occurred on January 17, 2007 in Bozeman, Montana. The case proceeded to trial in 2008, and a jury convicted Wagner of attempted deliberate homicide with a weapon. On appeal, this Court reversed and remanded for a new trial upon finding that prosecutorial comments regarding Wagner's post-*Miranda* silence constituted plain error. *See State v. Wagner*, 2009 MT 256, 352 Mont. 1, 215 P.3d 20. Because we recounted in detail the factual history of this matter in *Wagner*, we provide here only those details pertinent to Wagner's present appeal.

2

¶7 After we remanded the case for a new trial, the District Court held several pre-trial hearings and ruled on various motions. Of particular relevance here is Wagner's December 24, 2009 motion to dismiss due to negligent destruction of exculpatory evidence. Wagner argued that police failed to properly preserve the crime scene by allowing Peters' father, Dr. Peters, to enter and move Peters' vehicle prior to it being processed. As a result, Wagner claimed a violation of his due process rights.

¶8 The District Court held a hearing on the motion on March 24, 2010. The court denied the motion, and issued a decision and order on March 31, 2010. Based on testimony and evidence presented at the hearing, the court made several factual findings pertaining to the crime scene following the shooting. The court found that Peters was quickly transported to the hospital by ambulance while law enforcement worked to secure the scene and establish perimeters. During that time, Dr. Peters made two separate trips to Peters' vehicle. On the first trip, Dr. Peters saw and collected a .32 caliber automatic gun from the floor of the vehicle, which he brought to a police officer on the scene. Dr. Peters thought he may have touched the door and steering wheel during this trip. Dr. Peters made a second trip to the vehicle in search of Peters' cell phone. He rummaged through the vehicle for a few minutes, found the phone, and gave it to one of the officers. Because the vehicle was in the middle of the road, Dr. Peters moved it to the side of the road, locked it and brought the keys to an officer. Dr. Peters was trying to "get things under control and help out," and was not thinking about the overriding concept of a crime scene. Due to the injuries sustained in the shooting and the fact that Wagner's location was unknown after the incident, the District

3

Court found that "preserving property was a lower priority [for law enforcement] than life safety and security issues."

¶9 Wagner alleged that Dr. Peters destroyed exculpatory evidence during these two trips to Peters' truck. In the court's order denying Wagner's motion, the court found that Wagner went "to substantial lengths to set forth numerous pieces of evidence that were not gathered by law enforcement as a result of [Dr.] Peters moving [Peters'] truck and removing items." However, the court determined that Wagner failed to show that any of the allegedly destroyed evidence was material to his defense or apparently exculpatory.

¶10 Also relevant is the pretrial motions hearing (the Hearing) the District Court held on February 25, 2010. The court heard arguments on several motions, including Wagner's motion to exclude prior testimony. When Wagner requested transcripts from the Hearing at the beginning of this appeal he was notified that due to technical problems that occurred during the Hearing, no transcript of the proceeding existed. On October 28, 2011, Wagner filed a motion with this Court to remand and begin case anew. He argued that the unavailability of a transcript of the Hearing constituted a violation of his due process rights. The State objected, asserting that the unavailable transcript would not prevent effective appellate review of Wagner's appeal. We denied Wagner's motion, concluding "the unavailable transcript would be of limited value in connection with this appeal and that the absence of the hearing transcript does not appear to rise to the level of a due process violation."

4

¶11 Wagner's second jury trial began on December 6, 2010, and concluded three days later with a jury verdict convicting Wagner of attempted deliberate homicide. During the course of the trial, the State moved to preclude the introduction of other crimes evidence of its witness, Tim Polly (Polly), pursuant to M. R. Evid. 609. Polly was an inmate at the Gallatin County Detention Facility with Wagner who, prior to Wagner's second trial, notified law enforcement of statements Wagner made to Polly at the jail. Specifically, Polly informed that Wagner stated that once he beat the charges against him, he was going to kill Peters and Melody Lark, Wagner's ex-girlfriend. Polly has a lengthy criminal history that, among many other charges, includes making false reports to law enforcement. At the time of trial, Polly also had a pending felony charge against him for domestic violence. Wagner objected to the State's motion to preclude this evidence and argued that he should be allowed to inquire about Polly's full criminal record.

¶12 Relying on *State v. Martin*, 279 Mont. 185, 926 P.2d 1380 (1996), *State v. Gollehon*, 262 Mont. 1, 864 P.2d 249 (1993), and M. R. Evid. 608 and 609, the court granted the State's motion. Despite Wagner's contention that prohibiting cross-examination on Polly's criminal charges would violate Wagner's confrontation rights, the court determined Wagner could "ask [Polly] if he's given false information [to law enforcement] and ask him the circumstances of that . . . but [] cannot ask him if he was charged with a crime or whether he was convicted of a crime."

¶13 Additional facts will be included where necessary.

**STANDARD OF REVIEW**

5

¶14 The denial of a motion to dismiss in a criminal case presents a question of law that we review de novo. *State v. Giddings*, 2009 MT 61, ¶ 42, 349 Mont. 347, 208 P.3d 363. Generally, we review a district court's evidentiary rulings for an abuse of discretion. *State v. Stock*, 2011 MT 131, ¶ 17, 361 Mont. 1, 256 P.3d 899. A district court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *Stock*, ¶ 17.

## DISCUSSION

¶15 *Issue One: Was Wagner denied his constitutional right to due process because a motions hearing failed to record and therefore no transcript is available for effective appellate review?*

¶16 Wagner argues that pursuant to the United States Supreme Court decision in *Britt v. North Carolina*, 404 U.S. 226, 92 S. Ct. 431 (1971), the unavailability of the Hearing transcript resulted in a violation of his due process rights. He maintains that while several errors may have occurred at the Hearing—including a potential violation of attorney-client privilege when Wagner's former trial counsel testified—appellate counsel does not know exactly what they are because there is no transcript. Wagner also argues that any alternatives to recreate the record from the Hearing would be insufficient. Wagner therefore claims he is denied effective appellate review and this Court should reverse his conviction and remand for a new trial. In the alternative, Wagner asks this Court to remand to see if reconstruction of the Hearing is possible.

6

¶17   The State counters that this Court already disposed of Wagner's argument when we denied Wagner's motion to remand and begin the case anew. Pursuant to the law of the case doctrine, the State argues this Court should not reconsider this issue. We agree.

¶18   Under the law of the case doctrine, a prior Montana Supreme Court decision resolving an issue between the same parties is binding and may not be relitigated. *In re Estate of Snyder*, 2009 MT 291, ¶ 6, 352 Mont. 264, 217 P.3d 1027; *Murphy Homes, Inc. v. Muller*, 2007 MT 140, ¶ 56, 337 Mont. 411, 162 P.3d 106; *Muri v. Frank*, 2003 MT 316, ¶ 11, 318 Mont. 269, 80 P.3d 77. This doctrine "'expresses the practice of courts generally to refuse to reopen what has been decided.'" *Murphy Homes*, ¶ 56 (quoting *Fiscus v. Beartooth Elec. Coop.*, 180 Mont. 434, 436, 591 P.2d 196, 197 (1979)). Like res judicata, the law of the case doctrine is based on policies of judicial economy and finality of judgments. *Muri*, ¶ 11.

¶19   In his reply brief, Wagner argues that our order denying his motion to remand did not include a "resounding 'principle or rule of law necessary' to [our] decision." Relying on *Plains Grains L.P. v. Bd. of Co. Comm'rs*, 2010 MT 155, 357 Mont. 61, 238 P.3d 332, Wagner thus contends that we have not yet established any law of the case as to the issue of whether the unavailability of the Hearing transcript violated his due process rights.

¶20   This case is distinguishable from *Plains Grains*. There, we granted limited supervisory control to determine whether a district court's denial of Plains Grains' motion for summary judgment was a final resolution on the merits. *Plains Grains*, ¶¶ 15-16. In our order, we directed the district court to resolve any remaining claims and to issue a final judgment from which Plains Grains could appeal. *Plains Grains*, ¶ 16. We also outlined the

7

procedure for requesting a stay or injunction pending appeal in the event Plains Grains elected to do so. *Plains Grains*, ¶ 16. After the district court issued a final order, Plains Grains appealed without requesting a stay or injunction. *Plains Grains*, ¶ 17.

¶21 On appeal, we pointed out that our prior order did not render a decision on the issue of whether Plains Grains *had* to seek a stay or injunction pending appeal—we only gave advisory instructions. *Plains Grains*, ¶¶ 37, 40. Specifically, we stated that the order did not include "'a principle or rule of law necessary to the decision'" affirmatively directing Plains Grains to seek a stay or injunction. *Plains Grains*, ¶ 38 (quoting *Carlson v. N. Pac. Ry.*, 86 Mont. 78, 81, 281 P. 913, 914 (1929)). Therefore, even though Plains Grains did not seek a stay or injunction, the order "present[ed] no 'law of the case' roadblock to Plains Grains' pursuit of its appeal." *Plains Grains*, ¶ 40.

¶22 In the present case, Wagner attempts to argue the exact same issue he raised in his motion to remand and begin the case anew. Unlike *Plains Grains*, here we have already explicitly articulated our decision pertaining to Wagner's constitutional argument. Our order established as the law of the case that Wagner's due process rights were not violated by the unavailability of the Hearing transcript. This decision is binding and Wagner cannot now attempt to relitigate it.

¶23 *Issue Two: Did the District Court err by denying Wagner's motion to dismiss for negligent destruction of exculpatory evidence?*

¶24 Wagner asserts that his due process rights were violated due to the State's negligence in preserving exculpatory evidence. He argues that by allowing Dr. Peters to enter and move

Peters' vehicle prior to it being processed, thereby introducing and removing physical evidence, the State negligently allowed exculpatory evidence to be destroyed. Specifically, Wagner states that Dr. Peters tampered with the vehicle, its contents, and location by removing Peters' .32 caliber handgun from the vehicle and leaving his own gun on the seat, rummaging through the vehicle searching for Peters' cell phone and removing it, and driving the vehicle and locking its doors. Wagner claims that Dr. Peters' actions destroyed evidence of "blood splatter," "footprints, gunshot residue, open windows or doors, [the] exact location of Peters' gun, contents of Peters' cell phone, fingerprints, etc."

¶25 The State responds that the police had no duty to gather this evidence, and, therefore, their failure to do so did not violate Wagner's due process rights. The State further asserts that none of the allegedly missing evidence was material. Instead, it maintains the evidence was only potentially exculpatory. Therefore, the State argues that the District Court properly denied Wagner's motion to dismiss. We agree.

¶26 A criminal defendant has a constitutional right to obtain exculpatory evidence, and the State must not interfere with that right. *State v. Saxton*, 2003 MT 105, ¶ 32, 315 Mont. 315, 68 P.3d 721. However, this is only a personal right; police officers are not required to take initiative or even assist the defendant with procuring exculpatory evidence. *Saxton*, ¶ 32. Despite not having an affirmative duty to gather exculpatory evidence on behalf of defendants, police officers "'may not frustrate or hamper an accused's right to obtain exculpatory evidence.'" *Saxton*, ¶ 32 (quoting *State v. Belgarde*, 1998 MT 152, ¶ 16, 289 Mont. 287, 962 P.2d 571).

9

¶27 To amount to a denial of due process, evidence that is negligently destroyed must be "'material and of substantial use, vital to the defense, and exculpatory.'" *Giddings*, ¶ 52 (quoting *Sate v. Weaver*, 1998 MT 167, ¶ 54, 290 Mont. 58, 964 P.2d 713). To establish materiality, evidence "'must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Saxton*, ¶ 32 (quoting *California v. Trombetta*, 467 U.S. 479, 489, 104 S. Ct. 2528, 2534 (1984)). Evidence is exculpatory if it "'would have tended to clear the accused of guilt.'" *Giddings*, ¶ 52 (quoting *State v. Heth*, 230 Mont. 268, 272, 750 P.2d 103, 105 (1988)). Where destroyed or lost evidence is only potentially exculpatory, the defendant must show bad faith by the State in order to establish a due process violation. *Giddings*, ¶ 48.

¶28 Here, Wagner maintains he is not arguing that law enforcement failed to gather evidence at the crime scene, which he acknowledges would not violate his due process rights. Instead, Wagner asserts law enforcement had a duty not to frustrate his right to obtain exculpatory evidence and that this right was hampered and evidence destroyed because the crime scene was not properly preserved. Wagner advances *State v. Swanson*, 222 Mont. 357, 722 P.2d 1155 (1986), in support of his position.

¶29 In *Swanson*, a defendant arrested for driving under the influence of alcohol (DUI) requested an independent blood test. *Swanson*, 222 Mont. at 359, 722 P.2d at 1156. After the blood test was administered, law enforcement inadvertently left the blood sample sitting on a countertop unrefrigerated, destroying its evidentiary value. *Swanson*, 222 Mont. at 359-

10

60, 722 P.2d at 1156-57. This Court dismissed the charge against Swanson, determining that "[o]nce the sample was taken from Swanson, the police had a duty to see to its safekeeping." *Swanson*, 222 Mont. at 362, 722 P.2d at 1158. We stated that while the police have no duty "to assist in procuring any evidence on behalf of a defendant which is deemed necessary to his defense . . . in no event can [they] hamper or interfere with efforts on the part of an accused to obtain a sampling of his blood . . . ." *Swanson*, 222 Mont. at 361, 722 P.2d at 1157.

¶30     This case is distinguishable from *Swanson*. There, law enforcement had already procured evidence and then negligently destroyed it. Here, on the other hand, police officers never obtained any evidence from in or around Peters' vehicle to begin with.

¶31     This Court has emphasized the distinction between the State's duty to gather evidence and its duty to preserve exculpatory evidence. In *State v. Sadowski*, 247 Mont. 63, 805 P.2d 537 (1991) (overruled in part on other grounds), a defendant convicted of deliberate homicide argued that his due process rights were violated when the State negligently failed to gather exculpatory evidence. Specifically, Sadowski asserted that police officers failed to take into evidence items from the crime scene that could have been weapons used by the victim that would have supported the defendant's justifiable use of force defense and provided fingerprint evidence. *Sadowski*, 247 Mont. at 78, 805 P.2d at 546. We rejected Sadowski's attempt at characterizing a failure of police to gather evidence as a negligent suppression of evidence, and noted the distinction between the two. Emphasizing that "'*Swanson* . . . does *not* stand for the proposition that police officers have to assist in the

11

gathering of such [exculpatory] evidence,'" and that "'officers do not have an affirmative duty to search out favorable evidence for the defendant,'" we concluded Sadowski's due process rights were not violated. *Sadowski*, 247 Mont. at 79, 805 P.2d at 547 (quoting *Heth*, 230 Mont. at 271-272, 750 P.2d at 104-105). *See also State v. Cooksey*, 2012 MT 226, 366 Mont. 346, 286 P.3d 1174 (holding that a district court correctly applied the law when it found that § 45-3-112, MCA,[1] did not impose any new and independent duty for law enforcement to investigate cases involving justifiable use of force. Instead, we determined the statute reflects long-established obligations regarding the prosecution's duty to provide to the defense any exculpatory evidence *in the government's possession. Cooksey*, ¶ 34 (emphasis added)).

¶32 We agree with the District Court that, like Sadowski, Wagner "attempts to blur the distinction between the 'gathering' of evidence and 'preserving' evidence." Wagner does not contend that the police obtained evidence of such things as footprints, fingerprints and gunshot residue and then negligently destroyed, lost or withheld them from Wagner. Rather, he insists that evidence seemingly available to the police was not gathered prior to Dr. Peters entering and moving the truck. Because the police officers had no duty to gather allegedly exculpatory evidence for Wagner, their failure to do so did not violate Wagner's due process rights. Also, while Wagner argues that it was the police officers' improper preservation of the entire crime scene that resulted in lost evidence that might have otherwise been

---

[1] Section 45-3-112, MCA, was enacted in 2009 and provides: "When an investigation is conducted by a peace officer of an incident that appears to have or is alleged to have involved justifiable use of force, the investigation must be conducted so as to disclose all evidence, including testimony concerning the alleged offense and that might

12

obtainable, he has not advanced any facts or authority supporting a determination that the police were negligent as they responded to the situation and secured the house and its perimeter to ensure safety.

¶33 Furthermore, even if we were to assume, arguendo, that Wagner's claim is properly characterized as a failure of police to preserve evidence rather than a failure to gather evidence, Wagner has failed to show that any of the evidence was, in fact, exculpatory. Rather, the missing evidence was only potentially exculpatory. Wagner admits as much in his opening brief, stating that the evidence associated with the vehicle and surrounding area "might possess some exculpatory value," that he is unable to use "potentially exculpatory evidence," and that the evidence "could have/would have shown" that Peters was untruthful. Although Wagner maintains in his reply brief that he does not concede the evidence was only potentially exculpatory, he has never shown how any of it would have tended to clear him of guilt. There is no indication from the appellate briefs or the District Court record that, had the police gathered pieces of evidence from in and around Peters' truck prior to Dr. Peters entering and moving it—evidence that may or may not have even existed—any of it would have cleared Wagner of the charge against him. As the District Court determined, Wagner "simply speculates that potentially exculpatory evidence existed," and claims, "without any factual basis, that the exculpatory nature of this evidence was apparent to law enforcement."

---

support the apparent or alleged justifiable use of force."

13

¶34 Accordingly, we hold that the District Court did not err in denying Wagner's motion to dismiss.

¶35 *Issue Three: Did the District Court err by improperly limiting Wagner's cross-examination of a State's witness?*

¶36 On appeal, Wagner does not challenge the court's ruling pertaining to questioning on Polly's criminal convictions. Rather, Wagner argues the court erred by denying him the opportunity to challenge Polly's credibility by inquiring into the prior and pending criminal charges against him. Wagner asserts that the District Court "applied the wrong law to the issue," and incorrectly analyzed the issue under Rule 609 instead of under the constitutional right to confront witnesses.

¶37 Both the federal and Montana constitutions provide defendants with the right to confront witnesses against them. U.S. Const. amend. VI; Mont. Const. art. II, § 24. The ability to cross-examine a witness represents the "cornerstone" of a defendant's confrontation rights. *State v. Norquay*, 2011 MT 34, ¶ 20, 359 Mont. 257, 248 P.3d 817. However, we have clearly stated that the Confrontation Clause "'guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *State v. Skinner*, 2007 MT 175, ¶ 31, 338 Mont. 197, 163 P.3d 399 (quoting *State v. Jenkins*, 2001 MT 79, ¶ 19, 305 Mont. 95, 23 P.3d 201) (emphasis in original). Trial judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on [] cross-examination . . . ." *State v. Wilson*, 2007 MT 327, ¶ 45, 340 Mont. 191, 172 P.3d 1264.

14

¶38    Here, the District Court gave Wagner the opportunity to cross-examine Polly, and Wagner did in fact cross-examine the witness during the trial. Therefore, the issue is not constitutional in nature but evidentiary. *See Skinner*, ¶ 31 (holding that because the defendant was given an opportunity to and in fact did cross-examine a witness, "the issue is not constitutional in nature but evidentiary, which we review for an abuse of discretion").

¶39    We conclude the District Court did not abuse its discretion in limiting cross-examination about Polly's previous and pending criminal charges against him. M. R. Evid. 608(b) provides that a court has the discretion whether to admit specific instances of conduct to show a witness's credibility. The extent of cross-examination on whether a witness has been accused of another or prior crime is within the trial court's discretion. *State v. Short*, 217 Mont. 62, 67, 702 P.2d 979, 982 (1985). Cross-examination for these purposes is restricted "because of the limited probative value in relation to credibility." *Short*, 217 Mont. at 67, 702 P.2d at 982. The District Court allowed Wagner to attack Polly's credibility by cross-examining him on his past conduct relating to incidents of providing false statements to law enforcement. At the same time, the court's ruling ensured that the cross-examination did not turn into an unnecessary inquiry of issues relating to Polly's criminal history.

## CONCLUSION

¶40    For the reasons stated above, we affirm the District Court's judgment.

¶41    Affirmed.

15

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ BRIAN MORRIS